RUDOLPH SPITZENGEL, APPELLANT, v. GREENLEASE MOTOR CAR COMPANY, A CORPORATION, RESPONDENT.—136 S. W. (2d) 100.

Kansas City Court of Appeals. January 8, 1940.

*Homer A. Cope, Cope & Hadsell* and *Walter A. Raymond* for appellant.

*Morrison, Nugent, Berger, Byers & Johns* and *R. L. Hecker* for respondent.

SHAIN, P. J.—This is an appeal from the action of the trial court in granting a new trial. The facts, briefly stated, are that plaintiff filed suit against defendant for conversion of his automobile. Said automobile had been purchased by plaintiff through defendant's salesman, Murray D. Parks, on part cash and part credit basis. To secure defendant for a deferred payment of $58.96, the plaintiff executed a monthly payable installment note (payments of $7.37, for eight months) which note was secured by a chattel mortgage on the automobile.

It is shown that plaintiff made prompt payment of all installments and paid the last installment before same was due and his note was duly cancelled and returned to him together with the said chattel mortgage.

The evidence discloses that after payment, cancellation and surrender of the note and chattel, defendant made written demand on plaintiff to pay a claimed balance due on said note.

The above stated facts appear undisputed. As to occurrences thereafter the evidence is conflicting.

As verdict and judgment was for plaintiff, further statements of facts will be confined to evidence most favorable to plaintiff.

It appears that plaintiff, who is a widower, resides at 1409 Bellefontaine, Kansas City, Missouri, and is employed in the shipping department of Loose Wiles Biscuit Company.

Plaintiff testified in effect that during business hours he had not time to attend to other matters, but that sometime after receiving notice from defendant demanding further payment, he called de-

fendant's office over the telephone during the noon hour and talked to someone unknown to him who answered the telephone and stated to said person that he had paid for his car and received the response that they would look into it.

The record discloses that Mr. Parks made several trips to plaintiff's home for the purpose of demanding payment of the claimed balance due on the note but did not find plaintiff at home. However, on one occasion, plaintiff's daughter was at plaintiff's home when Mr. Parks came and told Mr. Parks that the car had been paid for.

It appears that on the evening of August 4th, plaintiff had driven his car from his work to his home, parked same near his house in his yard and had left his home for some purpose. It appears that Mr. Parks came to his home on said August 4th, after plaintiff had parked his car and left. On this occasion a Mr. Ballou, son-in-law of plaintiff, was present and he testified to the happenings as follows:

"Q. Now, did you thereafter see Mr. Parks at any time? A. On August 4, he came out to 1409 Bellefontaine.

"Q. And what time of the day or night was that? . A. It was around eight o'clock.

"Q. In the evening? A. That night.

"Q. All right. A. Then I talked to him myself at that time. .

"Q. What did he say to you? A. He asked if Mr. Spitzengel was there. I said, 'No, sir, he is not here right now.' He said, 'What time will he be here'? I said, 'I do not know as to what time he will be here.' He says, 'I came out to get a payment on the car or the car.' I told the man, Mr. Parks, that the car was paid for, that I had saw the chattel mortgage, but he said that the car was not paid for, that he either had to have the payment or the car, and I told him the car was paid for. He went and taken the car and I told him if he taken the car that he would get himself in trouble by taking the car, but he got in it, went in the yard and got in the car and drove it out of the yard and went with it."

The evidence is to the effect that Mr. Parks, agent of defendant, took the car from plaintiff's premises on the evening of aforesaid without plaintiff's knowledge or consent and that the same never has been redelivered to plaintiff.

The evidence is to the effect that on the morning after plaintiff learned that his car had been taken, as aforesaid, he placed the matter in the hands of an attorney. No demand was ever made by plaintiff to defendant for return of the car.

The defendant introduces evidence to the effect that several trips were made to plaintiff's home with the purpose of returning the car but plaintiff was not at home on these occasions. It appears from the evidence that no attempt was made by defendant to personally contact plaintiff at his place of employment prior to or after taking the car.

The third and fourth paragraphs of plaintiff's petition are as follows:

"Plaintiff further states that on or about the 6th day of May, 1938, he discharged the obligation of said chattel mortgage and paid the balance of said note secured thereby, and became the absolute owner of the above described automobile, and as such was in the lawful possession of the same as his own property; that thereafter, and on or about the 4th day of August, 1938, while plaintiff still owned the automobile above described, and being in lawful possession of the same, the defendant, through its duly authorized agent, servant and employee, came onto plaintiff's premises at 1409 Bellefontaine Street in Kansas City, Jackson County, Missouri, without plaintiff's permission or consent, and willfully, maliciously, wantonly, unlawfully and wrongfully repossessed, took, and converted said automobile to its own use, all to plaintiff's damage in the reasonable sum of $100, the reasonable value of said property at the time of the unlawful conversion thereof. Plaintiff further states that such wrongful conversion by the defendant of plaintiff's said property was unlawful, wanton, willful, and malicious, and plaintiff is therefore entitled to punitive damages in the further reasonable sum of $2400.

"Wherefore, by reason of the premises, plaintiff prays judgment against the defendant in the sum of $100 as actual damages, and in the further sum of $2400 as punitive damages, or in the total sum of $2500, together with his costs herein incurred and expended."

The defendant in its answer pleads no mitigating circumstances nor makes tender of the car. The answer being a general denial, we must, therefore, look to the evidence to ascertain defendant's theory of defense.

The only explanation that we can gather from the evidence, for defendant's actions, is that when plaintiff paid and received his cancelled note and chattel mortgage, proper entries were not made by defendant as to same. Without any shown search for the note and chattel mortgage, defendant without any process of law and without the consent of plaintiff, and with warning by plaintiff's daughter and son-in-law that car had been paid for, proceeded to take plaintiff's car from plaintiff's premises into its possession.

It appears that after taking possession of the car, defendant then makes the search that should have been made before acting and discovers that the note and chattel mortgage were not in its possession. Thereafter, a few trips are made to plaintiff's home in plaintiff's absence with stated intention of turning the property back. No attempt is shown to take the car to plaintiff's place of employment. We glean from the whole record herein that defendant acted on the theory that instead of turning the matter over to an attorney, the

duty devolved upon plaintiff to hunt up the defendant and request the return of his car.

This case was submitted to the jury under three instructions on part of plaintiff. Defendant's instructions are not in issue in this review.

Plaintiff's instructions are as follows:

"1.

"The court instructs the jury that if you find and believe from all the evidence in this case that on or about the 4th day of August, 1938, the plaintiff was the owner and rightfully in possession of the Buick coupe automobile mentioned in evidence, and that the defendant's duly authorized agent, servant and employee, M. D. Parks, while engaged in the scope of his employment as such, if you so find, on or about said date, came to the plaintiff's premises at 1409 Bellefontaine Street in Kansas City, Jackson County, Missouri, and without the permission or consent of plaintiff took possession of and converted plaintiff's said automobile to the use of the defendant, if so, and if you further find and believe from the evidence that defendant at said time had no right to the possession of said automobile, and that the taking thereof was wrongful and unlawful, and if you further find and believe that as a direct result of such taking, if so plaintiff was damaged then your verdict should be for the plaintiff and against the defendant for the reasonable market value of said automobile as shown by the evidence, if any at the date of the conversion thereof by defendant if you so find.

"2.

"The court instructs the jury that if you find the issues for the plaintiff and against the defendant, under Instruction No. 1, and allow to plaintiff actual damages, then you are further instructed that if you find and believe from the evidence that the taking and conversion of plaintiff's said automobile was willful, malicious, wanton, wrongful and unlawful, then you may, in your discretion, in addition to the actual damages awarded plaintiff, if any, allow him such further sum by way of punitive damages as you may find and believe from the evidence as will be a proper punishment to the defendant for such conduct, if so, and a proper warning to others.

. . . . . . .

"5.

"You are further instructed that the Court does not mean to assume as true or established any of the matters mentioned or referred to in the instructions, but leaves you to determine from the evidence whether or not such matters have been established as facts by the evidence."

The jury returned a verdict for $100 actual and $500 punitive damages. A judgment in conformity with verdict was duly entered.

The defendant in due time filed its motion for a new trial based upon twenty-three grounds. One of the grounds charged error in the giving of Instruction No. 2, *supra*.

Before passing upon the motion for new trial, the court ordered plaintiff to make remittiture of the $500 punitive damages under penalty of granting a new trial if not done. Plaintiff, refusing to make remittiture, the court made order granting new trial as follows:

"Wherefore, it is ordered by the Court that defendant's motion for a new trial of this cause be and the same is hereby sustained, on the 5th ground set forth in said motion, because of the giving of Instruction No. 2 at the request of plaintiff; to which action and ruling of the Court the plaintiff at the time duly excepted and still excepts."

From the above order, plaintiff duly appealed, charging that the court committed error in making said order taking from plaintiff his verdict for punitive damages. Plaintiff contends that under the pleading and the facts and circumstances in evidence, there is made a submissible case for punitive damages.

There was a verdict and judgment for actual damages. The defendant in its brief herein nowhere contends that plaintiff is not entitled to recover for actual damages. The only point urged as to the actual damages is that same are excessive.

Under such a state of facts, if the pleadings and the evidence do justify the submission of the matter of punitive damages, then the court's action as shown by the order, *supra,* is in error. This is so for the reason that if the pleadings and evidence justify the submission, the plaintiff is entitled as a matter of law to have the issue submitted.

Our circuit courts, however, have powers of exercising sound discretion in passing upon the question of whether or not there is substantial evidence to support the submission of an issue.

As the judgment entry in this case does not disclose whether or not the trial court based its action upon the grounds that under the pleadings, facts and circumstances before the court the issue of punitive damages was not admissible as a matter of law or upon the ground of no substantial evidence, this Court must make its review by a careful study of the record with the situation above pointed out in mind. We have made a careful study of the record, and based upon the pleadings and the facts and circumstances above conclude that as a matter of law the issue of punitive damages was for the jury unless the court would be justified, in the exercise of wise discretion, to take such issue from the jury on grounds of no substantial evidence to support.

The defendant in its brief urges that no evidence to justify the submission of punitive damages is shown. However, in its discussion

of this matter the defendant urges consideration *as matter of law* more extensively than *as matter of fact*.

Defendant's brief contains a paragraph as follows:

"Plaintiff's brief says 'punitive damages are allowable in suits for conversion where the facts are sufficient to warrant their assessment.' As an abstract proposition of law that is 100 per cent correct, but the five trover cases cited by plaintiff are wholly inapplicable to the facts in this case."

It is true that trover and fraud cases more universally present the elements that justify punitive damages and, therefore, such cases are more frequently the subject of judicial opinion.. However, when facts in conversion cases justify the application, then the law and the application of the law is the same as in fraud cases.

In Summers v. Keller, 152 Mo. App. 634-635, the policy of the law of Missouri is set forth as follows:

"The policy of the law which authorized the assessment of punitive damages in any case rests upon the idea that the wrongdoer deserves some punishment in addition to being required to make restitution, and to justify the award of such damages two things must occur:

"(1) The act complained of must be wrong and some actual damage result therefrom. (2) The wrongdoer must have known that his act was wrong, and he must have done it intending at the time to inflict injury thereby, *or it must have been done under such circumstances that the law will imply the evil intent.*" (Italics ours.)

The above language of the Springfield Court of Appeals was approved in Keller v. Summers, 262 Mo. 331. In the course of discussion in the above case, the court states the correct rule as to punitive damages in case of recovery for actual damages as follows:

"Punitive damages may be recovered where a proper basis therefor is laid in the petition and proved, although the plaintiff recovers only nominal actual damages."

In Finke v. Boyer, 56 S. W. (2d) 378, the Supreme Court of Missouri states the law applicable to punitive damages as follows:

"Since the instant case was briefed and argued, this court *en banc* has held that punitive damages can be awarded in a case of 'fraud alleged to have been perpetrated upon the plaintiff by the defendants in a real estate trade.' [Luikart v. Miller et al., 48 S. W. (2d) 867, 868.] In that case the court *en banc* said: 'Punitive damages can be awarded in cases of this character where the representations were characterized by malice. Not necessarily with the purpose to inflict a wrong upon the party to whom they are made; malice, according to the legal definition, is 'the intentional doing of a wrongful act without just cause or excuse.' [McNamara v. St. Louis Transit Co., 182 Mo. 681, 81 S. W. 880, 881, 66 L. R. A. 486.] An act must have been done either with an intent to inflict an injury or under circumstances that the law will imply an evil intent. It may be implied from reck-

less disregard of another's rights and interests. [Summers v. Keller, 152 Mo. App. 634, 635, 133 S. W. 1180, a ruling approved by this court, 262 Mo. 332, 171 S. W. 336.]''

The defendant in its brief herein expresses its theory as follows: ''Plaintiff's whole effort is an attempt to capitalize on an *innocent error or mistake* made by defendant.'' (Italics ours.) As to whether or not action taken by mistake or error be innocent may present an issue of fact for the jury. As to such question, legal malice may be found from showing of a wrongful act without a just cause or excuse, and wherein the necessity of any direct showing of spite, ill will, willfulness or wantonness does not exist. [Lampert v. Judge & Dolph Drug Co., 238 Mo. 409, 141 S. W. 1095.]

The undisputed evidence in the case at bar is that the defendant without any process of law and without the consent of plaintiff took plaintiff's automobile from plaintiff's premises. Further, defendant responds in court with no plea of mitigation or justification and the only excuse given in evidence under its plea of general denial is that it did not know that plaintiff had paid the note, which it had stamped paid and returned to plaintiff together with the chattel mortgage when plaintiff discharged his debt by full payment. Further, in the trial defendant interjects the theory that plaintiff is seeking to capitalize on its ''innocent error or mistake.''

We conclude that the pleadings and the facts and circumstances in evidence in this case justifies, as a matter of law, the submission of punitive damages. We further conclude that there is such substantial evidence on such issue that the trial court would be erroneous in exercise of wise discretion if it refused to submit the issue on grounds of no substantial evidence to support.

It follows that we conclude the trial court was in error in granting a new trial on grounds stated in its order, *supra.* However, it is our duty to give consideration of other reasons in defendant's motion for a new trial which are urged in defendant's brief.

In defendant's brief, the first point urged, is that ''the court correctly ruled that it had erred in giving Instruction No. 2 on punitive damages.'' We have definitely gone into, discussed and concluded against defendant as to above point insofar as the matter of justification is concerned. Defendant makes no point and submits no authority on the question as to whether or not Instruction No. 2 be a correct statement of the law when punitive damages is an issue in the case. It is evident from the court's entry that a new trial was not granted on grounds that Instruction No. 2 was an erroneous statement of law when the issue of punitive damages is in the case.

The burden rests upon the appellant to show that grounds for new trial stated by the court do not justify its act in granting new trial. However, as to all other matters, when court specifies a direct reason, same are treated as overruled and it devolves upon the respondent

to point them out and show they authorized the order. [Smith v. K. C. Pub. Serv. Co. (Mo.), 43 S. W. (2d) 548.]

We conclude that when instructions No. 1 and 2, *supra*, are taken together, the same present correct statement of law.

Defendant makes points as follows:

## "III.

### "(a)

"The verdict assessing punitive damages is against the evidence and the weight of the evidence.

### "(b)

"The court erred in excluding offered evidence proving that plaintiff induced the repossession and entrapped defendant.

### "(c)

"The court erred in not giving that part of defendant's offered Instruction D referring to provocation.

### "(d)

"The verdict was excessive both as to compensatory and punitive damages, and so much so as to show bias and prejudice on the part of the jury."

All of these points are abstract assertions with no reasons assigned and call for no further comment than appears in the opinion, above. In other words, there is nothing presented in these stated points that point out and show that other grounds authorized the action of the court.

Judgment granting new trial overruled and cause remanded with instruction to the trial court to enter judgment for plaintiff in accordance with the verdict of the jury. All concur.