[Civil No. 4271.   Filed January 13, 1941.]

[108 Pac. (2d) 1006.]

CHARLES CAHN, Appellant, v. MARTHA
SCHMITZ, Guardian Ad Litem for WILLIAM
SCHMITZ, Appellee.

Messrs. Townsend, Jenckes & Wildman, for Appellant.

Mr. Richard G. Johnson, for Appellee.

ROSS, J.—The plaintiff William Schmitz (a minor), through his guardian *ad litem* Martha Schmitz, brought an action against Charles Cahn and others for damages for personal injuries he alleges he sustained in their employment. What disposition was made of the action as to "other" defendants is immaterial. On January 6, 1933, the case as to Cahn was tried before the court without a jury. At the conclusion of the trial, the court caused the following minute entry to be made:

" . . . it is ordered that upon the presentation of a formal, written judgment by the plaintiff, and its approval and signing by the court, and filing thereof, judgment will be rendered in favor of the plaintiff and against the defendant in the sum of $5,000.00."

Nothing further was done until January 31, 1940, when plaintiff William Schmitz made a motion for the entry of a written judgment in accordance with the court's order of January 6, 1933. This motion and the objections thereto came on for hearing on February 21, 1940, at which hearing both parties were represented by counsel. At the hearing it was disclosed that plaintiff's trial attorney was dead; that plaintiff had thought all the time that he had a good judgment; that he had been so assured by his attorney. It also appears that defendant Cahn at the time of the trial was in the process of liquidation in bankruptcy. It was shown that plaintiff became 21 years old on Janu-

ary 6, 1933, the date judgment was ordered in his favor. Upon the showing made at the hearing, the court granted plaintiff's motion for the entry of a formal, written judgment on March 11, 1940.

The defendant has appealed from the court's order denying his motion to dismiss the cause for want of jurisdiction, overruling his objections to the motion for judgment and the order granting such motion, and from the judgment.

█ The first point he raises by his assignments is that the court lost jurisdiction to enter judgment because the provisions of Rule VII, Uniform Rules for the Superior Court, were not followed. This rule requires the party in whose favor the court decides to prepare and present to the judge a proposed form of judgment within five days thereafter, and to serve a copy thereof on the opposite party, and provides that "no judgment or decree shall be rendered or signed by the judge *before* the expiration of said five days." (Italics ours.) In this rule there is no prohibition against rendering or signing a judgment or decree *after* the expiration of said five days. Indeed, an examination of the cases shows that this court has insisted that Rule VII should be followed and, where it was not, has reversed and remanded in order that the necessary steps as to serving proposed judgment and filing same should be taken. *Chiricahua Ranches Co.* v. *State,* 44 Ariz. 559, 39 Pac. (2d) 640; *Harrington* v. *White,* 48 Ariz. 291, 61 Pac. (2d) 392; *American Surety Co.* v. *Mosher,* 48 Ariz. 552, 64 Pac. (2d) 1025; *Ross* v. *White,* 46 Ariz. 304, 50 Pac. (2d) 12; *Ferguson* v. *Goff,* 46 Ariz. 260, 50 Pac. (2d) 20. Neither Rule VII nor the decisions of this court makes jurisdictional the failure to file formal, written judgment within five days after the court's decision. On the contrary, the only effect of such failure is to require the party en-

titled to judgment to go back and comply with such rule.

█ It is next claimed that it was error to enter formal, written judgment on March 11, 1940, because plaintiff had not prosecuted his suit to judgment within two years after his cause of action accrued, or with diligence. This contention is based on section 29–202, Arizona Code of 1939, which provides:

"There shall be commenced and prosecuted within two (2) years after the cause of action shall have accrued, and not afterward, the following actions, for:

"1. Injuries done to the person of another; . . . "

It is undisputed the action was brought within two years after plaintiff was injured and it is also a fact that the case was, within a reasonable time, brought to trial and the decision in favor of the plaintiff promptly rendered. The only omission was the failure to have formal, written judgment entered. The case was prosecuted to this point. All that was necessary thereafter were formal acts required by Rule VII, not in any way affecting the merits of the case. The defendant had been granted the privilege of defending himself in a fair trial against the charge of negligently injuring plaintiff and had lost. The decision on the facts had been announced. In other words, the cause had been literally "commenced and prosecuted" as provided by the statute of limitation. Sec. 29–202, *supra*.

Defendant cites *Forbach* v. *Steinfeld,* 34 Ariz. 519, 273 Pac. 6, 9, as settling the question of limitation in his favor, but the facts in that case were not at all similar to the facts here. In the Steinfeld case the action was commenced in Pinal county on October 4, 1915, by the Consolidated National Bank of Tucson to collect two notes from Forbach, one due in sixty days after date and the other on demand, and the summons was issued and served on Forbach on February

24, 1916. Nothing further was done in said action. On March 3, 1927, Steinfeld, as assignee of the same notes, brought an action on them against Forbach in Pima county. On objection by Forbach that another suit for the same causes of action was pending in Pinal county, the latter action was dismissed. The notes were eleven years overdue when the action was filed in Pima county. We said, speaking of the Pinal action:

" . . . the matter was allowed to slumber for 11 years with no action taken. While paragraph 714, *supra,* provides that suits must be 'commenced' within four years, it also requires that they shall be 'prosecuted' within that time. We think that the two words are not synonymous. Under the statute, not only must the action be commenced within four years, but it must be carried on with reasonable diligence, and we are of the opinion that where plaintiff has done nothing for 11 years after suit has been filed and the defendant served with process, the suit has not been 'prosecuted' within the meaning of the statute. . . . "

It is readily seen the fact situations are radically different, and the rule must be different. In the instant case the suit had been tried and judgment ordered. In the Steinfeld case there had been no trial and no step taken after filing complaint.

■ It is next said that when the written judgment was entered March 11, 1940, William Schmitz, the plaintiff, had reached his majority; that his guardian *ad litem's* authority had terminated, and that "she is no longer entitled to judgment herein." Sec. 21–503, Id., provides:

"If a minor shall desire to bring a civil action, and such minor has no guardian within the state, the court in which the action is to be brought shall appoint a guardian *ad litem* for such minor to bring such action; and the action may thereupon be brought in the name of the minor by such guardian. . . . "

While the plaintiff's pleadings make the guardian *ad litem* the plaintiff, under the statute the action is by the infant and should be brought and prosecuted in his name. However, no exception has been taken to this departure from the statute. The case has proceeded thus far without any objection. The error of the pleader, in assuming that the action was in the name of the guardian *ad litem* instead of that of the minor child, in no way affects the merits of the case. The action was the minor's action and the judgment is his also. The fact that the guardian *ad litem*, who was plaintiff's mother, took an active part in the trial of the case, as well as in securing the entry of proper judgment, does not change the law that makes such action the infant's. After plaintiff reached his majority, the name of his guardian *ad litem* in the trial of the action and in subsequent orders should have been dropped but that this was not done can in no-wise affect the merits of the case. *Johnson* v. *Alexander*, 66 Okl. 128, 167 Pac. 989.

It is next argued that a lapse of seven years between the order for and entry of judgment is so unreasonably great as to render such entry inequitable, and that it should not be permitted. The defendant, we think, in his brief clearly states the rule concerning delayed judgment as follows:

"The law seems to be well established that the mere lapse of time does not work a loss of jurisdiction to render or enter a judgment, and that a party is entitled to have a judgment so entered *unless the lapse of time is unreasonably great,* so long as the court has not lost jurisdiction of the case."

We have no statute fixing a time after the court's decision in which the formal judgment must be signed by the judge and filed with the clerk. Section 15, article VI of the Constitution provides that

"Every case submitted to the judge of a superior court for his decision shall be decided within sixty days from the submission thereof. . . . "

But we have held the failure to render a decision within sixty days does not deprive the court of jurisdiction to enter judgment later. *Williams* v. *Williams*, 29 Ariz. 538, 243 Pac. 402; *Johnson* v. *Johnson*, 46 Ariz. 535, 52 Pac. (2d) 1162. In *Edwards* v. *Hellings*, 103 Cal. 204, 37 Pac. 218, 220, it was held, under a statute authorizing the clerk of the court upon request to enter judgment immediately against a defaulting defendant, that such clerk might enter judgment eight years after entry of default. The court said:

" . . . The provision that the clerk must enter the judgment 'immediately' after entering his default is merely directory. His failure to do so may render him liable to an action by the judgment creditor, but does not render void the judgment subsequently entered upon such default; nor can the defendant against whom the judgment is entered invoke such failure for the purpose of annulling a judgment to which he has no other defense. The statute of limitations upon the judgment runs from the time of its entry, and not from its rendition. *Trenouth* v. *Farrington*, 54 Cal. 273. See, also, *Franklin* v. *Merida*, 50 Cal. 289. If the appellant had desired to set the statute of limitations running, he could himself have caused the judgment to be entered at any time after its rendition. . . . "

There is nothing in this record to show that the entry of judgment on March 11, 1940, was inequitable or unfair or that failure to enter it earlier did harm to defendant. While the appeal is from a number of orders and rulings, it is also from the judgment itself, and there is no suggestion of error in the trial or in the amount of the judgment awarded.

The judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.